```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
```

_____
                                    )
**UNITED STATES OF AMERICA,**       )
                                    )
      v.                  ) Criminal Action No. 06-363 (RWR)
                                    )
**JOSEPH SOOMAI,**                  )
                                    )
      **Defendant.**       )
_____)

## MEMORANDUM OPINION

Defendant Joseph Soomai pled guilty in 2007 under a plea agreement to one count of conspiracy to distribute for importation to the United States five kilograms or more of cocaine, see 21 U.S.C. §§ 959, 960, 963; 18 U.S.C. § 2.  He now moves to vacate, set aside, or correct his sentence and judgment under 28 U.S.C. § 2255, arguing ineffective assistance of counsel because his trial counsel failed to appeal despite Soomai's request to file an appeal.  The government opposes Soomai's motion, arguing that Soomai never asked his trial counsel to file an appeal, and trial counsel's failure to consult Soomai about an appeal was not constitutionally defective assistance.  Because Soomai failed to prove that he asked his trial counsel to file an appeal, Soomai's motion will be denied.

### BACKGROUND

From May 2005 to December 2006, Soomai, along with his accomplices, conspired to establish "a narcotics-smuggling cell

in the United States" and met with an undercover agent to establish "a connection to supply illegal drugs, i.e., cocaine and heroin, to the Atlanta, Georgia, area." Stmt. of Facts in Supp. of Def.'s Plea of Guilty at 1, 8. Over several months, Soomai and the undercover agent negotiated heroin and cocaine purchases and deliveries. Id. at 2-7. Soomai and his co-conspirators were then arrested, id. at 7-8, and Soomai was charged with three counts drug trafficking, including conspiracy to manufacture and distribute to the United States cocaine and heroin. Soomai then pled guilty to conspiracy to manufacture and distribute into the United States five kilograms or more of cocaine and one kilogram or more of heroin. He was sentenced to 151 months of incarceration.

Soomai now moves under 28 U.S.C. § 2255, challenging his conviction. Soomai claims his attorney, David Bos, was ineffective because he failed to file an appeal despite Soomai's request after sentencing that Bos file a notice of appeal.[1] Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Mot."). The government contends that Soomai did not request that Bos file an appeal. Govt.'s Opp'n to Def.s' Mot. Under § 28 U.S.C. § 2255. Because of the factual disputes on the record, an evidentiary hearing on the

---

[1] Soomai also raised three other grounds for relief, but withdrew those claims on May 1, 2013.

ineffective assistance of counsel claim was held on October 16, 2013.

## DISCUSSION

In a § 2255 motion, a petitioner can move the sentencing court to "vacate, set aside or correct the sentence" if "the sentence was imposed in violation of the Constitution or laws of the United States, . . . or [if] the sentence was in excess of the maximum authorized by law[.]"  28 U.S.C. § 2255(a).  The burden lies on the petitioner to prove the violation by a preponderance of the evidence.  United States v. Pollard, 602 F. Supp. 2d 165, 168 (D.D.C. 2009).

The Sixth Amendment provides criminal defendants the right to be represented by counsel.  U.S. Const. amend. VI.  Implicit in this guarantee is that counsel will provide effective assistance of counsel.  McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970) ("[T]he right to counsel is the right to the effective assistance of counsel.").  To establish that representation was constitutionally deficient, Soomai must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687 (1984).

To establish the performance prong, the petitioner must show that counsel did not provide reasonable service under the "prevailing professional norms" given the circumstances. Strickland, 466 U.S. at 688. When counsel consults a client about an appeal, "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Roe v. Flores-Ortega, 528 U.S. 470, 476-78 (2000) ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). If counsel has not consulted the client about an appeal, then he performs in a professionally unreasonable manner if "counsel's failure to consult with the defendant itself constitutes deficient performance." Id. at 478.

As to the prejudice prong, the petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. If counsel did not file a notice of appeal despite being directed to, then there is a presumption of prejudice because counsel's failure to file an appeal "deprive[s] . . . [the defendant] of the appellate proceeding altogether." Flores-Ortega, 528 U.S. at 483.

Here, Soomai contends that he asked Bos to file an appeal, that Bos did not do so, and that Bos thereby rendered ineffective

assistance. Since it is undisputed that Bos did not file a notice of appeal, the dispositive factual issue is whether Soomai in fact requested that Bos file an appeal.

On the one hand, Soomai has presented unrebutted testimony that he asked Bos to file a notice of appeal. Bos' testimony about Soomai's case is that he does not recall one way or the other about whether Soomai asked him to file an appeal. Evidentiary Hr'g Tr., Oct. 16, 2013, ("Tr.") at 35:13-14 (stating that he had no "specific memory of speaking to Mr. Soomai after the sentence"). Bos candidly admitted that it was "possible" that Soomai requested that he file an appeal, Tr. at 40:9-11, and that he had a heavy case load of about 40 to 60 other cases at the same time that he handled Soomai's case, Tr. at 45:3-5.

On the other hand, Bos' testimony about his common practice was uncontested and credible. Bos testified that his practice is to file a notice of appeal if the defendant instructed him to. Tr. at 36:7-10. Importantly, Bos credibly testified that he would file a notice of appeal upon request even if he did not believe that the client had a meritorious claim. Tr. at 36:11-12 (stating, in response to whether he would file a notice of appeal if he believed there was no merit to the appeal, that "that's not my decision, it's the client's decision"). He also testified that he did not have any notes in Soomai's file indicating that Soomai wanted to file an appeal. Tr. at 39:14-19.

Significantly, Soomai's testimony about his request to file an appeal reflects inconsistencies. At first, in his motion, Soomai asserts that "immediately" after the court informed him that he had a right to appeal his case, he asked Bos to file an appeal. Mot. at 5(b). Soomai explains,

> After sentencing, I was returned back to the holding cells behind the court room. My defense counsel, David W. Bos came back to the holding cells to visit with me. I told him I wanted to appeal the sentence. Mr. Bos told me that it was no use in appealing my sentence. I repeated to David Bos that I wanted to appeal my sentence.

Id. at 5(c).

At the evidentiary hearing, Soomai presented a different account of what happened. He stated that he had a "small discussion" at counsel table with Bos about the appeal. Tr. at 7:10. He then testified that, when Bos visited him at the cell block, he asked Bos to file an appeal, and Bos responded, "Don't worry, I'll get to it." Id. at 8:2-16. On the stand, Soomai did not originally mention that Bos had tried to convince him not to file an appeal. Cf. Mot. at 5(c) (stating that "Bos told me that it was no use in appealing my sentence"). When asked about the inconsistency in his petition during cross examination, Soomai then stated that Bos "tried to talk me out of it, but I told him I needed to do what I wanted to do, but he tried to talk me out of it." Tr. at 19:12-17. Similarly, in Soomai's motion, he does not state that, in response to the request to file an appeal, Bos

replied, "Don't worry, I'll get to it." See Mot.; Tr. at 19:21-20:1. Soomai explained this omission on redirect by stating that "it wasn't necessary" to include in his motion. Tr. at 25:9-19.

Soomai's other assertions in his motion reflect additional inconsistencies. For example, he argues that he "never agreed in Court or to the Federal Probation/Parole Officer preparing my Presentence Investigation Report ('PSI') that I was responsible for the distribution of 150 or more kilograms of cocaine." Mot. at 5a. However, the plea agreement states, "[t]he [d]efendant agrees that . . . [he] is accountable for the distribution of 150 kilograms or more of cocaine[.]" Plea Agreement at 3. This plea agreement was signed by Soomai, id. at 12, and he affirmed in it that he had "read this Plea Agreement and carefully reviewed every part of it with my attorney," and that he "fully underst[ood] and . . . voluntarily agree[d] to" the plea agreement, id. Additionally, at the plea hearing, he confirmed that he "carefully read both the plea agreement and the statement of facts" and that he understood "the terms of the agreement." Pl. Tr. at 28:16-23. He also confirmed that he signed the agreement, id. at 29:18-25, and that he did so only after he read, understood, and agreed with its contents, id. at 30:1-4.

Soomai also indicates in his motion that he believed he would receive ten years as a sentence. At his plea hearing, Soomai stated that he thought he would face "10 or a little more

than 10" years in prison, Plea Tr. 33:8-14, but that Bos explained that he could be sentenced to "about 200-something months or something like that," id. at 33:20-21.  After Bos supplemented Soomai's response at the plea hearing, Bos clarified that the guidelines range was 210 to 262 months, which is "probably about 18 years," id. at 34:1-5, and Soomai confirmed that he heard and understood that clarification, and that it "accurately reflect[ed] what [Bos] ha[d] explained" to him, id. at 34:15-20.  Soomai was then informed that he could face "up to the statutory maximum of life in prison, not just the 262 months you heard about," id. at 35:6-7, and he confirmed again that he understood that, as well as the fact that "the sentence imposed may be much higher than any estimate that your attorney or the government has made so far," id. at 35:10-16, and could be as high as life in prison, id. at 35:14-16.  At the evidentiary hearing, however, Soomai asserted that Bos told him he would receive ten years.  Tr. at 23:14-17.  Soomai also asserted that he was not aware that the plea paperwork did not say anything about a promise of ten years.  See Tr. at 24:1-9.  Yet Soomai confirmed at the plea hearing that no one had "promised or suggested" that he would be given a lesser sentence, and that no one has made "any promises . . . as to what sentence" will be imposed.  Plea Tr. at 37:16-22; see also Plea Agreement at 2-3

(explaining that the sentencing ranges estimated by his attorney or other parties are "prediction[s]" and "not a promise").

Finally, Soomai alleged that he sent three letters to Bos or his superior, A.J. Kramer -- one handwritten, and two typed. Tr. at 8:22-25, 11:20-23, 12:19-21. Only two letters were produced in evidence: an August 3, 2009 letter to A.J. Kramer, and a September 2, 2009 letter to Bos. Soomai contends that in the handwritten letter -- sent in January, February or March of 2009, several months after his sentencing -- he asked Bos about the appeal. Soomai did not produce this handwritten letter; rather, he explained that since he did not think he needed to make a photocopy of the letter, he no longer has a copy. Tr. at 9:17-23. However, Bos also did not have a copy of this letter in his file, and did not recall the letter. Tr. at 36:21-37:16, 38:20-39:6. Bos testified that his common practice is, when receiving a letter from a defendant, to put it into the defendant's file. Id. at 38:20-22. Though this letter may have been probative of Soomai's claim, Soomai has provided no evidence about the letter aside from his assertion that he sent one asking about his appeal. Without the text of the handwritten letter, little weight can be ascribed to the claim that Soomai wrote Bos in January, February, or March of 2009 asking Bos about the appeal.

This is particularly so since the two letters that have been produced do not mention a previous handwritten or first quarter

letter.  In fact, the September 2, 2009 letter begins, "[t]his is the second letter that I have written to the Office of the Federal Public Defender for the District of Columbia."  Defs.'s Ex. 1.  Soomai then notes that "[t]he first letter was addressed directly to your boss."  Id.  Soomai then filed his § 2255 motion on September 23, 2009, in which he states he has "written letters to David Bos," but provides no details as to the content of those letters or the number of letters.  Mot. at 5c.

Importantly, neither the August 3 nor September 2 letter mentions a requested appeal.  Cf. United States v. Carter, Criminal Action No. 04-155 (GK), 2006 WL 1274784, at *2 (D.D.C. May 9, 2006) ("[I]f [the defendant] had instructed [counsel] to file an appeal, it is difficult to believe he would not have inquired in one of the letters he wrote about its status.").  In fact, these two letters only request legal materials from his case.  These inconsistencies in his testimony, his motion, and his statements at the plea hearing undermine Soomai's credibility and the reliability of his memory.

Finally, though Bos also has an interest in protecting his license, Soomai has the greater interest in the outcome of this case.  Cf. Carter, 2006 WL 1274784, at *3 (in making a credibility determination, finding that defendant "has every reason in the world to lie," that "his testimony was wholly self-serving," and that there was no evidence "apart from [the

defendant's] bare assertion" that the defendant requested counsel to file a notice of appeal). This interest, in tandem with the inconsistencies in Soomai's testimony, undermines the credibility of Soomai's testimony.

At best, the evidence is at equipoise; however, Soomai has not tipped the scale in his favor and discharged his ultimate burden of proof. Accordingly, because Soomai has not carried his burden to prove by a preponderance of the evidence his claim that he asked Bos to file a notice of appeal, Soomai has not shown that Bos rendered ineffective assistance of counsel by failing to follow Soomai's explicit directions.[2]

---

[2] Though Soomai has not demonstrated that Bos' performance was deficient because of failure to file a notice of appeal when directed to, Soomai could nevertheless have a colorable ineffective assistance of counsel claim if Bos' performance were otherwise deficient. See United States v. Taylor, 339 F.3d 973, 977-78 (D.C. Cir. 2003). In a case where there are no specific appeal instructions one way or the other, courts consider whether counsel's failure to consult the client was deficient. See Taylor, 339 F.3d at 977. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480. "[A] highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Id. "[W]hether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights" are other factors to consider. Id.

CONCLUSION

Soomai failed to show that his trial counsel rendered ineffective assistance of counsel under <u>Strickland</u> and <u>Flores-Ortega</u>.  Therefore, Soomai's § 2255 motion will be denied.  A separate Order accompanies this Memorandum Opinion.

SIGNED this 5th day of March, 2014.

```
            _____/s/_____
            RICHARD W. ROBERTS
            Chief Judge
```

---

Here, Soomai does not argue that Bos rendered ineffective assistance of counsel for failing to consult him about an appeal, nor does he present any evidence demonstrating that Bos' representation was otherwise deficient.  In any event, even if Bos did not consult Soomai about an appeal, that failure was reasonable.  Soomai's conviction followed a guilty plea, which "may indicate that the defendant seeks an end to judicial proceedings."  <u>See</u> <u>Flores-Ortega</u>, 528 U.S. at 480.  Soomai also received a sentence better than one that he bargained for since his adjusted offense level of 37 was discussed in the plea agreement, Plea Agreement at 3-4, the sentencing range for that offense level was 210 to 262 months, Presentence Investigation Report ¶ 60, and Soomai's sentence of 151 months was considerably below this range.  Soomai also has not proven that he indicated a desire to appeal, and given the circumstances, Bos had no reason to believe that Soomai would want to appeal.